IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIRANDA R. A., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 20-cv-00453-JED-SH |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff Miranda R. A. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

## I. Disability Determination and Standard of Review

Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title XVI disability benefits on May 7, 2018, with a protective filing date of April 24, 2018. (R. 19, 225-26.) In her application, Plaintiff alleged she has been unable to work since March 22, 2017, due to conditions including a learning disability and a right hip replacement. (R. 225, 253.) Plaintiff was 42 years old at the time of the ALJ's decision. (R. 37, 225.) Plaintiff has a GED and past relevant work as a housekeeping cleaner and fast-food worker. (R. 54-57, 73.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 141-44, 148-54.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which the ALJ conducted on December 19, 2019. (R. 44-80, 155.) The ALJ issued a decision on February 4, 2020, denying benefits and finding Plaintiff not disabled. (R. 19-37.) The Appeals Council denied review on July 7, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff timely filed this appeal on September 9, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

3

**III.    The ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of April 24, 2018.[2] (R. 21.) At step two, the ALJ found Plaintiff had the following severe impairments: (1) status post right hip replacement; (2) history of sciatic palsy with periodic right foot drop; (3) restless leg syndrome of the right leg; (4) anxiety disorder; and (5) obesity. (R. 21-23.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 23-26.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "less than a full range of light work as defined in 20 CFR 416.967(b)" with several mental limitations and the following non-exertional physical limitations:

> [C]laimant is able to able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6-hours in an 8-hour workday. She is able to stand and/or walk up to 2-hours in an 8-hour workday. She is able to frequently balance. She is able to occasionally climb ramps or stairs or stoop. However, her job should not involve climbing ladders, ropes or scaffolds, kneeling, crouching or crawling.

(R. 26.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 26-35.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a housekeeping cleaner or fast-food worker. (R. 35.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as small products assembler, electronics worker, and document preparer. (R. 35-36.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 36-37.)

---

[2] The ALJ noted that Plaintiff's earning records show she made $97.00 in 2019, but this amount did not rise to the level of substantial gainful activity. (R. 21.)

4

**IV.   Issues**

Plaintiff claims to raise three allegations of error in her challenge to the denial of benefits. (ECF No. 16 at 5.) However, the undersigned notes at least seven specific legal and factual challenges to the ALJ's decision contained in Plaintiff's briefing. (*Id.* at 5-15.) Plaintiff alleges: (1) the ALJ improperly evaluated the examination records of Dr. Nick Lee Carroll (*id.* at 5-6); (2) the ALJ improperly assessed Plaintiff's credibility and consistency—including failing to account for Plaintiff's chronic pain and obesity (*id.* at 9-10, 12-15); (3) the ALJ failed to adequately develop the record (*id.* at 7-8); (4) the ALJ failed to incorporate Paragraph B limitations found at step two in the RFC and in the step-five hypothetical (*id.* at 8-9); (5) the ALJ failed to discuss the *Third-Party Function Report* completed by Plaintiff's daughter, Victoria McKee (*id.* at 13-15); (6) the representative jobs the VE identified at step five do not exist in significant numbers in the national economy (*id.* at 11); and (7) the ALJ's hypothetical at step five was flawed due to the incomplete RFC (*id.* at 10-11, 15).[3]

While most of Plaintiff's scattershot contentions miss the mark, the undersigned finds the ALJ committed reversable error when she ignored the *Function Report* completed by Plaintiff's daughter. (R. 278-85.) The undersigned rejects the Commissioner's contention that, under 20 C.F.R. § 416.920c(d), the Commissioner lacked a duty to consider, or evaluate, lay witness statements. (ECF No. 21 at 10 ("There is . . . no legal basis for Plaintiff's argument . . . that the ALJ erred by not evaluating Ms. McKee's statement." (citation omitted).) The Commissioner goes too far—twisting an

---

[3] While she characterizes them somewhat differently, the Commissioner also agrees that Plaintiff raised seven allegations of error, including the one addressed below. (ECF No. 21 at 3.)

5

abrogation of a duty to *articulate* certain factors into an abrogation of a duty to even *consider* the evidence at all. Here, there is no indication the ALJ knew the statement existed or considered it in any way. The undersigned, therefore, recommends the matter be reversed and remanded for further proceedings. The undersigned does not address the other issues raised in Plaintiff's briefing.

V.   **Analysis**

    A.   **Victoria McKee's Third-Party Function Report**

In Plaintiff's brief, among the numerous arguments noted above, she points out that "the ALJ failed to even discuss Claimant's third party testimony from Ms. McKee," which Plaintiff alleges supports her own testimony and purported limitations. (ECF No. 16 at 13-15.)

In a *Third-Party Function Report* completed by Plaintiff's daughter, Victoria McKee, on June 16, 2018, Ms. McKee offered statements that largely corroborated Plaintiff's reported functional limitations. (*See generally* R. 278-85.) Specifically, Ms. McKee documented limitations in Plaintiff's ability to bend, kneel, lift, stand, sit, sleep, dress, bathe, use the toilet, cook, complete chores, squat, climb stairs, and handle stress. (*Id.*) While this report affirms a large portion of the restrictions Plaintiff described in her own *Function Report*, it is not a carbon copy. (*Compare, e.g.*, R. 278 (adding to her mother's report that Plaintiff cannot "move out of a 90° angle"), 279 (reporting that her mother cannot get off the toilet by herself), 280 (reporting that it takes her mother longer to finish chores than reported in Plaintiff's *Function Report*), 282 (noting that Plaintiff takes Ms. McKee to work and goes to the store on a regular basis), 283 (noting that Plaintiff has a hard time completing tasks and that she can only lift 10 pounds, rather than

6

20) *with* R. 270-77.) Nowhere in the ALJ's decision, however, is it evident she considered Ms. McKee's report. (*See generally* R. 19-37.[4])

The Commissioner addresses the omission summarily, implying that due to the new requirements governing consideration of nonmedical evidence under 20 C.F.R. § 416.920c(d), the ALJ was permitted to completely ignore this evidence. (ECF No. 21 at 10.) The undersigned disagrees.[5] As such, for the reasons explained below, the ALJ recommends the matter be reversed and remanded.

### B. The ALJ's Failure to Consider Nonmedical Evidence

#### 1. The Role of Evidence from Nonmedical Sources Under Current Regulations

In the evaluation of a claimant's symptoms, nonmedical sources are an important tool ALJs use to obtain a complete picture of the claimant's impairments—both in evaluating symptoms and determining the claimant's RFC.

> The information that [the claimant's] . . . nonmedical sources provide about [their] pain or other symptoms . . . is . . . an important indicator of the intensity and persistence of [the] symptoms. Because symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that . . . nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence

---

[4] The ALJ noted a number of times that she gave "careful consideration" to the entire record. (R. 20-21, 26-27.) This is insufficient to show she evaluated Ms. McKee's *Third-Party Function Report*, as it is not mentioned or cited once in the decision or at the hearing. (*See* 19-37, 44-80.) *See Jerri F. v. Kijakazi*, No. 1:20-4037-RMG-SVH, 2021 WL 3362227, at *14 (D.S.C. July 29, 2021), *R. & R. adopted,* 2021 WL 3396230 (D.S.C. Aug. 3, 2021) ("The undersigned is not persuaded that the boilerplate language indicating he had considered 'all evidence' is sufficient to demonstrate the ALJ considered the witness statements without any more specific reference to the statements."); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("boilerplate language fails to inform [the Court] in a meaningful, reviewable way of the specific evidence the ALJ considered").

[5] The undersigned does not, however, credit the authorities relied on by Plaintiff, which include the rescinded Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (Aug. 9, 2006). *See* Recission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).

> and other evidence, will be taken into account . . . in reaching a conclusion as to whether [the claimant is] disabled.

20 C.F.R. § 416.929(c)(3); *see also id.* § 416.929(a) ("We will consider . . . any description [a claimant's] . . . nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work . . . ."); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) (noting that nonmedical sources may provide information that would be helpful in assessing the effects of a claimant's symptoms).

Similarly, in determining a claimant's RFC, the ALJ will "also consider descriptions and observations of [the claimant's] limitations from [their] impairment(s) . . . provided by . . . neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3); *see also id.* § 416.945(e) ("In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . ."). Consequently, the regulations and Ruling make clear that the ALJ must consider the observations of nonmedical sources like Ms. McKee's *Third-Party Function Report* in assessing Plaintiff's symptoms, determining her RFC, and, ultimately, deciding whether or not she is disabled.

Yet, the Commissioner would have this Court hold that, because the manner in which ALJs <u>articulate</u> their consideration of certain opinion evidence has changed, the above provisions are somehow to be ignored. The undersigned does not find 20 C.F.R. § 416.920c(d) to have this sweeping effect. Instead, a more limited reading of § 416.920c(d) is appropriate.

### 2. Articulation Requirements, Past and Present

For cases filed before March 27, 2017, SSR 06-03p provided the standards for evaluating evidence from "other sources," such as friends or relatives. *See* SSR 06-03p,

8

at *2. When considering such evidence from nonmedical sources who had not seen the claimant in a professional capacity, the ALJ was to evaluate factors including "the nature and extent of the relationship, whether the evidence [wa]s consistent with other evidence, and any other factors that tend[ed] to support or refute the evidence." *Id.* at *6.[6]

The regulations changed the articulation requirements for cases filed on or after March 27, 2017 (like Plaintiff's). Now, the rules provide that an ALJ must explain how she considered certain factors as to medical opinions and prior administrative findings. 20 C.F.R. § 416.920c(a)-(c). For those opinions, the ALJ considers such evidence through an analysis of the supportability of the opinion, its consistency with the record, the party's relationship with the claimant, any specialization of the party, and other factors. *Id.* § 416.920c(c). After considering these factors, the ALJ is required only to explain the supportability and consistency determinations, unless certain other requirements are met. *Id.* § 416.920c(b)(2)-(3). These articulation requirements, however, do not apply to evidence from nonmedical sources—"We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section." *Id.* § 416.920c(d). That is all § 416.920c(d) changes. The regulation does not, and was not intended to, eliminate the relevance of nonmedical evidence in total.

Originally, when the Social Security Administration (the "Agency") proposed this new rule, it did not mention nonmedical sources, because the section "only discuss[ed] medical opinions, which come from medical sources." 82 Fed. Reg. at 5,855. In response

---

[6] The policies from SSR 06-03p were later codified into 20 C.F.R. § 416.927 for claims filed before March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,855 (Jan. 18, 2017); *see also* 20 C.F.R. § 416.927(f)(1) ("[W]e will consider [opinions from nonmedical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) of this section, [although] not every factor for weighing opinion evidence will apply in every case . . . .").

to comments, however, the Agency added text about evidence from nonmedical sources to clarify its intent. *Id.*

> Specifically, <u>aside from where our regulations elsewhere may require an adjudicator to articulate</u> how we consider evidence from nonmedical sources, such as when we evaluate symptoms, there is no requirement for us to articulate how we considered evidence from nonmedical sources about an individual's functional limitations and abilities <u>using the rules</u> in final . . . . 416.920c.

*Id.* (emphasis added) (footnote omitted). Indeed, the Agency continued to recognize that "family members[] and other nonmedical sources of evidence can provide helpful longitudinal evidence about how an impairment affects a person's functional abilities and limitations on a daily basis." *Id.* at 5,850. In some cases, "[d]epending on the unique evidence in each claim, it <u>may</u> be appropriate for an adjudicator to provide written analysis about how he or she considered evidence from nonmedical sources . . . ." *Id.* (emphasis added). While the need for such a written analysis may vary from case to case, the evidence is still <u>considered</u> in every case: "Our adjudicators will continue to assess an individual's ability to function under these final rules using <u>all</u> evidence we receive from <u>all</u> sources, including nonmedical sources." *Id.* (emphasis added).[7] The new regulation simply eliminates the need for articulation with the same level of detail required for medical opinions.

---

[7] Much of this discussion occurred in the Agency's response to comments about distinguishing between different types of nonmedical evidence. *Id.* However, the discussion makes it clear that the Agency's intent matches the plain language of the regulations cited above. Moreover, this discussion reveals the expansive nature of the Commissioner's arguments in this case. If the Commissioner prevailed, an ALJ would be empowered to ignore not only lay witness observations, but also reports from teachers, counselors, social workers, and welfare agency personnel. *See id.* (mentioning these groups as other sources of nonmedical evidence that is often important in cases, e.g., of child disability).

### 3. An ALJ Must Consider Nonmedical Evidence, such as the Third-Party Function Report

As the above analysis indicates, the undersigned expects an ALJ to fulfill her duty to assess a claimant's ability to function using all evidence, including nonmedical evidence. This finding is in accord with that of other courts who have considered this issue under the current regulations:

- "While the ALJ is not required to apply medical opinion factors to nonmedical source evidence, the regulations clearly do not contemplate or authorize simply ignoring such evidence that may otherwise be relevant to an ALJ's conclusions and/or findings." *Brooker v. Saul*, No. CIV-20-398-P, 2021 WL 1392860, at *6 (W.D. Okla. Apr. 13, 2021).

- "It may well be the case that the ALJ considered such evidence and properly discounted it, but his opinion leaves the Court with no way to tell. The ALJ's failure to provide any rationale for discounting this [function report] is reversible error." *Sandra S. v. Kijakazi*, No. 3:20-cv-00056-RLY-MPB, 2021 WL 3640000, at *7 (S.D. Ind. Aug. 2, 2021), *R. & R. adopted sub nom. Sandra S. v. Saul*, 2021 WL 3636042 (S.D. Ind. Aug. 17, 2021).

- "Plaintiff argues that the ALJ erred by failing to consider the statements of Plaintiff's father in their entirety. The Commissioner responds that, because Plaintiff's father is a non-medical source, 'the ALJ is not required to articulate how he considered' this evidence. But that statement does not follow from the applicable law. Per 20 C.F.R. § 404.1520c, an ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources *using the requirements in paragraphs (a)-(c) of this section*.' Paragraphs (a)-(c) of Section 404.1520c describe how the ALJ must consider and articulate medical opinions—paragraph (d) simply clarifies that an ALJ is not required to apply those factors to a nonmedical opinion. Indeed, an ALJ is specifically required to consider all medical and nonmedical evidence, including third party function reports." *Garling v. Kijakazi*, No. 3:20-CV-369-DRL-JPK, 2021 WL 3728544, at *6 (N.D. Ind. July 20, 2021) (citations omitted), *R. & R. adopted*, 2021 WL 3726870 (N.D. Ind. Aug. 23, 2021).

- "The Commissioner argues specific consideration of lay witness statements is no longer required pursuant to 20 C.F.R. § 404.1520c(d), but here, the question is not whether the ALJ provided sufficiently-specific reasons for rejecting the lay witness statements. Rather, the question is whether he considered them at all.

11

>The regulatory changes do not absolve ALJs of the requirement to consider lay witness statements. The plain language of 20 C.F.R. § 404.1520c(d) supports such a finding. It does not provide '[w]e are not required to articulate how we considered evidence from nonmedical sources.' Instead, it provides that ALJs are not required to provide that articulation 'using the requirements in paragraphs (a)–(c) of this section.' If ALJs were no longer required to provide any articulation as to how they considered lay witness statements, the additional language would be superfluous. In addition, 20 C.F.R. § 404.1529(c) and SSR 16-3p have not been amended, and both suggest that lay witness statements are among the relevant evidence." *Jerri F.*, 2021 WL 3362227, at *14 (citation omitted); *see also id.* at *13 (collecting cases upholding an "ALJ's treatment of witness statements where the ALJ specifically acknowledged the presence of the statements").

A relatively small number of cases have found no error when the ALJ wholly omitted from the decision any reference to consideration of third-party, nonmedical evidence. *See, e.g.*, *Evans v. Comm'r*, No. CIV-20-080-RAW-KEW, 2021 WL 4478171, at *6-7 (E.D. Okla. Sept. 15, 2021), *R. & R. adopted sub nom. Evans v. Kijakazi*, No. CIV-20-80-RAW-KEW, 2021 WL 4476629 (E.D. Okla. Sept. 29, 2021) (noting "the ALJ did not specifically discuss the function report," but "did state . . . he 'considered all evidence in the record even if not specifically cited in this decision'");[8] *Arbuckle v. Comm'r*, No. 3:20-CV-150-RP, 2021 WL 2879968, at *3 (N.D. Miss. July 8, 2021) (holding there was no error in the ALJ's failure to consider the third-party statement because the statement was "exhibited to the ALJ's decision" and reasoning that "the fact it is not discussed in the decision itself does not mean the ALJ failed to consider it"). Other cases have excused an omission where it was apparent from the ALJ's decision that he or she at least considered the nonmedical

---

[8] Even the court in *Evans* found that the "ALJ is not . . . absolved [by the new regulations] from considering non-medical source evidence when formulating the RFC." *Id.* at *6. Instead, the court there accepted the ALJ's generalized statement that he had considered "all evidence in the record" and determined to "take the ALJ at his word." *Id.* at *7. To the extent *Evans* stands for the proposition that the reviewing court can assume an ALJ considered evidence without any indication in the record that this occurred—other than mere boilerplate language—the undersigned rejects it. *See supra*. n.4.

evidence or third-party testimony. *See, e.g.*, *Burnett v. Comm'r of Soc. Sec. Admin.*, No. CIV-20-133-KEW, 2021 WL 4443330, at *5 (E.D. Okla. Sept. 28, 2021) (noting the ALJ specifically considered and evaluated the third-party report and hearing testimony of claimant's mother); *Keener v. Saul*, No. CIV-20-649-SM, 2021 WL 2460614, at *4 (W.D. Okla. June 16, 2021) (finding no error where the ALJ thoroughly summarized the third-party function reports and found they were inconsistent with the totality of the evidence); *see also Michael K. v. Saul*, No. 20 C 2944, 2021 WL 1546426, at *7 (N.D. Ill. Apr. 20, 2021); *Christopher V. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01378-BR, 2020 WL 5579821, at *7 (D. Or. Sept. 17, 2020).

The undersigned need not decide what sort of discussion would have been enough to show the ALJ considered the evidence from nonmedical sources. Here, the undersigned sees nothing to indicate the ALJ considered Ms. McKee's evidence at all. And, the Commissioner provides none. Instead, the Commissioner has chosen to take the rather drastic position that such omission is inherently appropriate and that there is "no legal basis" for asserting an ALJ errs by "not evaluating" a third-party statement. (ECF No. 21 at 10.) Such an extreme position cannot stand in the face of the legal authorities outlined above. The court will not assume the ALJ fulfilled her duties when she provided nothing from which it can base a determination as to whether or not relevant evidence was considered.

The undersigned recommends the matter be reversed and remanded.

## VI. Conclusion and Recommendation

The undersigned Magistrate Judge finds that the ALJ failed to apply the correct legal standards and that substantial evidence did not support the Commissioner's

decision. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 10, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 27th day of January, 2022.

*[signature]*

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**