## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MIRANDA R. A.,                          )
                                        )
      Plaintiff,                  )
                                        )
v.                                      )
                                        )   Case No. 20-cv-00453-NDF-SH
KILOLO KIJAKAZI,[1] Acting              )
Commissioner of Social Security,        )
                                        )
      Defendant.                  )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation on the issues remaining after the Opinion and Order of District Judge Nancy D. Freudenthal. (ECF No. 29.) Plaintiff Miranda R. A. filed the above-captioned case seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. On initial review, the undersigned recommended that the Commissioner's decision be reversed as to a single issue. (ECF No. 23.) Judge Freudenthal has rejected that recommendation and returned the matter to the undersigned for a report and recommendation on the remaining issues raised by Plaintiff's appeal.

For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED** as to those remaining issues.

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

## I.    Background

The undersigned's original report and recommendation (ECF No. 23) describes the general standard of determining disability, the scope of this court's review, the procedural background of this case, and the ALJ's decision.

## II.    Remaining Issues

The following issues remain before this Court for consideration: (1) whether the ALJ improperly evaluated the examination records of Dr. Nick Lee Carroll (ECF No. 16 at 5-6); (2) whether the ALJ failed to develop the record (*id.* at 7-8); (3) whether the ALJ failed to incorporate paragraph B limitations found at step two in the RFC and in the step-five hypothetical (*id.* at 8-9); (4) whether the ALJ improperly analyzed Plaintiff's symptoms—including whether she failed to account for Plaintiff's chronic pain and obesity (*id.* at 9-10, 12-15); (5) whether the representative jobs the VE identified at step five exist in significant numbers in the national economy (*id.* at 11); and (6) whether the ALJ's hypothetical at step five was flawed due to the incomplete RFC (*id.* at 10-11, 15).

The undersigned rejects each of these contentions and finds, as to these issues, that the ALJ's decision was supported by substantial evidence and in step with applicable legal standards.

## III.    Analysis

### A.    The ALJ Properly Evaluated Dr. Carroll's Findings.

Plaintiff first contends the ALJ improperly evaluated Dr. Carroll's consultative examination ("CE"), which Plaintiff asserts is "opinion evidence." (*Id.* at 5-6.) Dr. Carroll examined Plaintiff on September 20, 2018. (R. 503-08.) He noted Plaintiff's reported medical history and conducted a physical exam, after which he recorded his observations as to various systems (heart, extremities, gait, etc.). (R. 503-04.) Dr. Carroll then recorded his observations as to the range of motion in Plaintiff's joints. (R. 505-07.)

Finally, Dr. Carroll provided a "FUNCTIONAL EVALUATION ASSESSMENT" relating to Plaintiff's ability to use her hands.  (R. 507.)  The ALJ did not treat Dr. Carroll's findings as a "medical opinion" and did not analyze its persuasiveness, as she did with the opinions of other doctors.  (*Compare* R. 29 (treatment of Dr. Carroll) *with* R. 32-34 (treatment of Drs. Shah, Swisher, and Pella, and Ms. Cannon).)

Without stating what opinions Dr. Carroll offered, Plaintiff asserts this was an error.  (ECF No. 16 at 5-6.)  Plaintiff then states, generally, that the ALJ "failed to provide required legal support to support her limitations in Claimant's physical RFC."  (*Id.* at 6.)  Finally, Plaintiff quibbles with the substance of Dr. Carroll's examination findings— complaining that he (1) made "mostly normal findings" even though his examination occurred one month prior to a knee surgery; (2) did not note that Plaintiff had been prescribed a walker; (3) observed Plaintiff's right hip pain and limp but did not "discuss any pain with active range of movement in her right leg"; (4) "failed to note" Plaintiff's right knee problems; and (5) failed to discuss Plaintiff's past medical records.  (*Id.*)

First, it does not appear that the complained-of findings by Dr. Carroll constitute "medical opinions" under the current regulations.[2]  The applicable regulations define five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 416.913(a).  A medical opinion "is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their

---

[2] Other portions of Dr. Carroll's notes may have risen to the level of a medical opinion. (*See, e.g.*, R. 507 (finding Plaintiff could effectively grasp tools and manipulate small objects).)  As Plaintiff's functional ability to use her hands, however, is not at issue, any error relating to the ALJ's articulation of the persuasiveness of such opinions, if any, would have no effect on the outcome of the case and would be harmless.

ability to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions.  20 C.F.R. § 416.913(a)(2) & (a)(2)(i).  The physical demands of work activities include things like sitting, standing, and walking, as well as other physical functions (such as manipulative or postural functions like reaching, handling, stooping, or crouching).  *Id.* § 416.913(a)(2)(i)(A).  Medical opinions are different than "objective medical evidence," which is defined as including medical "signs." *Id.* §§ 416.902(k), 416.913(a)(1).  Such medical "signs" are "one or more anatomical, physiological, or psychological abnormalities that can be observed," apart from a claimant's statement of their own symptoms (like pain).  *Id.* § 416.902(l).  These categories are also different than "other medical evidence," which includes such things as a claimant's medical history, clinical findings, diagnosis, prescribed treatment, and prognosis. *Id.* § 416.913(a)(3).

When referring to the complained-of "mostly normal findings," Plaintiff cites R. 504, where Dr. Carroll reported the observations from his physical exam, including that Plaintiff moved about the room with a normal gait and speed; had a range of motion consistent with the observations on the next few pages (R. 505-06); and had no noted pain with passive range of movement.  (R. 504.)  At best, these observations constitute medical signs and are, therefore, objective medical evidence.  20 C.F.R. §§ 416.902(l), 416.913(a)(1).  Such clinical observations do not constitute medical opinions. *See, e.g.*, *Justin R. o/b/o Carla H. v. Kijakazi*, No. 21-CV-60-JFJ, 2022 WL 873616, at *4 (N.D. Okla. Mar. 23, 2022).  Additionally, the remainder of Plaintiff's complaints relate to <u>non-findings</u>.  It is difficult to see how silence by Dr. Carroll could constitute a "statement" about what Plaintiff could still do despite her impairments or whether she had impairment-related limitations in her ability to perform the physical demands of work

activities. *See* 20 C.F.R. § 416.913(a)(2) & (a)(2)(i)(A).  Even if Dr. Carroll had made such findings, they would be statements regarding Plaintiff's medical history or prescribed treatment (a prescribed walker[3] or past medical records), her symptoms (pain with active range of motion[4]), or a diagnosis (Plaintiff's right knee problems).  As such, the statements would either constitute other medical evidence or evidence from nonmedical sources, not medical opinions.  *Id.* § 416.913(a)(3)-(4).

Because the applicable statements from Dr. Carroll do not constitute medical opinions, the ALJ was not required to evaluate the persuasiveness of these statements or to articulate their supportability and consistency.  *See id.* § 416.920c(a), (b)(2).  Instead, the ALJ was merely obligated to consider Dr. Carroll's statements along with the other evidence.  *See id.* § 416.913(a).  The ALJ did this (R. 29), and Plaintiff provides no basis for the undersigned to find this consideration to be improper.

Finally, Plaintiff offers no support for her assertion that the physical RFC lacked a legal basis.  The ALJ analyzed Plaintiff's physical symptoms (R. 27), considered the objective medical evidence (R. 28-32), and analyzed the medical opinion of Dr. Shah as to Plaintiff's physical abilities (R. 32).  As for Dr. Shah's medical opinion, the ALJ found it somewhat persuasive, but determined further limitations were appropriate due to Plaintiff's combination of impairments.  (*Id.*)  The ALJ then concluded the analysis with

---

[3] Plaintiff provides no evidence that she was instructed to use a prescribed walker in 2018. Instead, Plaintiff and her daughter note that she was prescribed a walker on March 22, 2017 (R. 276, 284), the date she had hip surgery (*see, e.g.*, R. 421-22).  Contrary to Plaintiff's brief (ECF No. 16 at 2), the cited evidence does not show an active prescription for a walker in April 2017.  Rather, the evidence shows that, three weeks after surgery, Plaintiff was approved to "ambulate with a cane."  (R. 438.)

[4] Plaintiff's characterization of the record appears to ignore potentially relevant findings regarding pain in Plaintiff's right leg, as Dr. Carroll explicitly documented that "[e]xternally rotating the right hip elicits pain."  (R. 504.)

specific evidence supporting the RFC assessment, including for issues relating to Plaintiff's pain and other physical issues.  (R. 34-35.)  This was all that was required to reach an RFC under the applicable regulations and Rulings.  *See* 20 C.F.R. § 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

### B.   The ALJ Sufficiently Developed the Record.

Next, Plaintiff contends the ALJ failed to develop the record as it relates to Samantha Cannon, LCSW.  (ECF No. 16 at 7-8.)  Plaintiff saw Ms. Cannon at Improving Lives Counseling Services approximately 10 or 15 times.[5]  (R. 58-59, 598-605.)  In December 2018, Ms. Cannon offered an opinion of Plaintiff's ability to perform the mental demands of work activities (R. 583-86), which the ALJ found to be unpersuasive (R. 33-34).  The ALJ indicated that this finding was, in part, due to the lack of treatment records supporting her opinion, but the ALJ also found Ms. Cannon's opinions inconsistent with the longitudinal medical evidence of record.  (R. 34.)  Plaintiff agrees that the ALJ's assessment of Ms. Cannon's opinion was "legally appropriate" but argues "the ALJ failed her basic duty of inquiry to fully and fairly develop the record" by not obtaining treatment records from Ms. Cannon.  (ECF No. 16 at 6-7.)

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability."  *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).  Still, the ALJ has a basic obligation in every social security case to develop an adequate record consistent with the issues raised.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).  "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to [her]

---

[5] It is not clear when these visits occurred or how many occurred before Ms. Cannon's December 2018 opinion.  (*See, e.g.*, R. 604 (indicating plan for Plaintiff to attend counseling as starting on September 19, 2019).)

decision and learns the claimant's own version of those facts." *Id.* (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)).  While this duty applies even when the claimant is represented by counsel, *id.*, in such cases, the ALJ ordinarily can rely on that counsel to identify any issues requiring further development, *Branum*, 385 F.3d at 1271.  A claimant may not "rest on the record" and "exhort the ALJ that the case is ready for decision," then "later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).  As such, reversal is not ordinarily appropriate where a claimant's counsel has affirmatively submitted to the ALJ that the record is complete.  *Id.*

Here, Plaintiff's counsel not only represented that the record was complete, but also indicated that there were no more records available from Ms. Cannon:

> ALJ:  And with the receipt of the St. John records we will – the record will [be] complete?
>
> ATTY: I believe so Your Honor.  [Plaintiff] does continue to treat for instance at Improving Lives, but I think we have everything we can get up to date at this point.

(R. 48.)  The ALJ does not have to exhaust every possible line of inquiry; rather, the standard is one of reasonable good judgment with the duty being limited to fully and fairly developing the record as to material issues.  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).  Here, the ALJ did not merely rely on Ms. Cannon's *Mental Status Form*, but also on the "Client Assessment Records" from Improving Lives (R. 24, 31, 33-35 (citing Exhibit C10F)) and other extensive evidence of Plaintiff's mental health treatment (R. 24-25, 31-35).  Where counsel did not request any additional record development and where, as here, the need for additional evidence was not clearly established in the record, the ALJ was not obliged to obtain more evidence from Ms. Cannon.  *Cf. Fleetwood v. Barnhart*,

211 F. App'x 736, 741 (10th Cir. 2007).[6]  Finally, "good judgment" does not require an ALJ to request information from a medical provider when the claimant's counsel has represented that the provider has no more information.

### C.    The ALJ's Treatment of Plaintiff's Paragraph B Limitations in the RFC Was Proper.

Plaintiff argues the ALJ's "consideration of the paragraph B findings fails because the hypothetical question [and RFC] must contain all limitations of record."  (ECF No. 16 at 8.)  Plaintiff's reference to "paragraph B findings" refers to an analysis the ALJ conducts of mental impairments at step three of the sequential process—i.e, when the ALJ determines whether a claimant's severe impairment meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii).

Generally, the five-step sequential process outlined in 20 C.F.R. § 416.920 applies to the evaluation of all impairments, including mental impairments.  *See Id.* § 416.920a(a).  However, 20 C.F.R. § 416.920a also prescribes a "special technique" for evaluating mental impairments.  *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). First, the ALJ must establish whether the claimant has a medically determinable mental impairment.  20 C.F.R. § 416.920a(b)(1).  Second, the ALJ rates the functional limitation resulting from such impairment in four areas.[7]  *Id.* § 416.920a(b)-(c).  The degree of limitation is evaluated using a five-point scale: none → mild → moderate → marked → extreme.  *Id.* § 416.920a(c)(4).  The "degree-of-limitation ratings then inform [the ALJ's] conclusions at steps two and three of the five-step analysis."  *Wells*, 727 F.3d at 1068.  At

---

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[7] The four areas are the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  *Id.* § 416.920a(c)(3).

step two, the ALJ will generally equate a finding of "none" or "mild" with a finding that an impairment is not severe.  20 C.F.R. § 416.920a(d)(1).  At step three, the ALJ will use the degree-of-limitation rating to apply the listings, which include within them—usually under paragraph B—explanations regarding the effects of finding "marked" or "extreme" limitations.  *Id*. § 416.920a(d)(2); *see also, e.g., id.* pt. 404, subpt. P, app. 1, Listing 12.06(B).  These degree-of-limitation ratings are often referred to as "paragraph B" findings or criteria.  *See, e.g*., SSR 96-8p, at *4.

In this case, at step two, the ALJ found Plaintiff had a severe mental impairment— anxiety disorder.  (R. 21.)  At step three, the ALJ found Plaintiff had moderate limitations in three areas—the ability to (1) understand, remember, or apply information; (2) interact with others; and (3) concentrate, persist, or maintain pace.  (R. 23-24).  For the fourth area—the ability to adapt or manage oneself—the ALJ found Plaintiff had a mild limitation.  (R. 25.)  The ALJ determined this was not enough to meet or equal a listing.  (*Id*.)

Plaintiff contends the ALJ erred later in the sequential process—in her formulation of the RFC used at steps four and five—apparently because the ALJ did not incorporate the moderate limitations found at step three.  Plaintiff argues that persons with such moderate limitations *could* have difficulties maintaining a job.  (ECF No. 16 at 8.[8])  Plaintiff does not, however, provide any basis for the undersigned to find that a moderate

---

[8] For this argument, Plaintiff cites a case where a vocational expert ("VE") testified as to the impact of a claimant's moderate mental limitations on the ability to keep a job over time.  *See Pryce-Dawes v. Barnhart*, 166 F. App'x 348, 350-51 (10th Cir. 2006) (unpublished).  Plaintiff does not point to similar evidence in this case.  As for Plaintiff's subsequent reference to "productivity" (ECF No. 16 at 8), this does not appear to be supported by the cited case.  *See generally Stokes v. Astrue*, 274 F. App'x 675 (10th Cir. 2008).

limitation at step three necessarily corresponds to a functional limitation that must be included in the RFC and any hypotheticals to the VE.

The "paragraph B" limitations are distinctly <u>not</u> an RFC assessment.  SSR 96-8p, at *4.  Instead, the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," *id.*, where the focus is on work-related mental activities, including "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," *Wells*, 727 F.3d at 1069 (quoting SSR 96-8p, at *6).  The undersigned finds persuasive the Tenth Circuit's reasoning in *Beasley v. Colvin*, 520 F. App'x 748 (10th Cir. 2013) (unpublished).  There, the claimant argued the ALJ <u>had</u> to find limitations related to social functioning in the RFC, after finding moderate limitations in the "paragraph B" criteria.  *Id.* at *754.  The Tenth Circuit disagreed.  *Id.*  "[T]he ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Id.*

Moreover, Plaintiff offers no basis to find the ALJ failed to conduct a "detailed assessment" of Plaintiff's work-related mental activities in determining the RFC.  Indeed, after conducting the RFC analysis, the ALJ found Plaintiff mentally limited in numerous work-related functions.  (R. 26.[9])  The ALJ then used this RFC as a basis for the hypothetical to the VE.  (R. 73-77.)  Plaintiff relies on the mere fact that "moderate"

---

[9] "She is able to perform simple, routine tasks. . . . make judgments regarding simple, routine tasks. . . . maintain attention and concentration for up to 2-hours at a time while performing simple, routine tasks. . . . sustain the mental demands associated with performing simple, routine tasks throughout an ordinary workday and workweek. . . . frequently interact with supervisors, co-workers and the general public.  Her job should not involve more than ordinary and routine changes to work setting or job duties."  (R. 26.)

limitations were found at step three—and nothing more—to argue the RFC and hypothetical were incomplete.  Under *Beasley*, this argument fails.

### D.    The ALJ Appropriately Assessed Plaintiff's Symptoms.

Plaintiff also claims the ALJ's evaluation of Plaintiff's pain and other symptoms was deficient.  (ECF No. 16 at 9-10, 12-15.)  Plaintiff argues that the ALJ "did not discuss the severity and frequency of Claimant's pain, what caused the pain to increase, and what Claimant did to relieve it," as required by 20 C.F.R. § 416.929 (*id.* at 9); the ALJ's decision failed to contain even the minimal discussion of symptoms contemplated by the regulations (*id.* at 12-15); the ALJ failed to address Plaintiff's obesity (*id.* at 9); and the ALJ engaged in improper picking and choosing from record evidence (*id.* at 10).  The undersigned disagrees.

### 1.    Symptom Evaluation Generally

Generally, when evaluating a claimant's symptoms, the ALJ uses a two-step process.[10]  *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929 (regulation governing the evaluation of symptoms).  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged.  SSR 16-3p, at *3.  Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's ability to perform work-related activities.  *Id.* at *4.

---

[10] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished).  But, the term "credibility" is no longer used.  SSR 16-3p, at *2.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan*, 552 F.3d at 1190 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required, so long as the ALJ sets forth the specific evidence on which she relies in evaluating the symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).[11]

## 2. Symptom Evaluation in the ALJ's Decision

Here, the ALJ's opinion adequately accounted for Plaintiff's pain and other symptoms. First, after discussing Plaintiff's testimony and function report, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be

---

[11] That is not to say, however, that the ALJ may simply make "a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

expected to cause [her] alleged symptoms . . . ."  (R. 27.)  Second, the ALJ considered whether Plaintiff's subjective statements regarding her impairments, when evaluated alongside all other objective evidence, led to the conclusion that she was disabled. Although the ALJ ultimately found that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (*id.*), the ALJ sufficiently considered Plaintiff's subjective symptoms, including her complaints of pain and her obesity-related limitations.  In accordance with 20 C.F.R. § 416.929(c)(3) and SSR 16-3p, the ALJ weighed factors such as Plaintiff's daily activities (R. 27, 31);[12] the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 27-32, 34-35);[13] precipitating and

---

[12] The ALJ noted Plaintiff's testimony and reports that cramping decreased her driving; her children helped with housework; she shopped with assistance from her daughters; she had issues putting on her socks and shoes due to difficulty bending; she "experienced two bad days weekly"; she could help care for her granddaughter when her daughter worked; she could function and get through the day; and she had problems getting in and out of the tub and with the physical demands of housework, but denied other problems independently accomplishing daily tasks.  (R. 27, 31.)

[13] The ALJ noted Plaintiff's testimony that she had foot drop, but a brace helped somewhat; she could lift 30 pounds and stand between 30 and 40 minutes; her hip issues and restless leg syndrome caused sleeping issues; and she had migraines five times a month for roughly 30 to 40 minutes at a time.  (R. 27.)  The ALJ also cited examination notes that Plaintiff at times presented with pain, rigidity, and limited mobility in her right hip; foot drop; tenderness to palpation in her back; pain and numbness because of her right knee and foot; headaches; and an overweight body mass index ("BMI").  (R. 28-32.) The ALJ also cited notes where Plaintiff, at times, ambulated without any issue or pain; had a normal gait; presented with good range of motion with flexion, extension, abduction, adduction, and rotation of her right hip; presented with full range of motion in her right knee and other extremities; presented with a normal right foot; presented without any gross instability or abnormal motor movements; exhibited a full range of motion in her spine and negative straight leg raises bilaterally; and otherwise presented normally upon physical examination.  (R. 28-32, 34-35.)

aggravating factors (R. 27-30);[14] the type, dosage, and effectiveness of Plaintiff's medication (R. 22, 27-31, 35);[15] and the other treatment she received for symptom relief (R. 28-29, 31).[16]

Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not wholly consistent with the record.[17] (R. 27; *see also* R. 35 ("the claimant has impairments that cause significant limitations, but considering treating and examining source opinions, limitations are not of a severity to preclude [the] ability to meet demands of basic work activities").) This was an adequate evaluation under 20 C.F.R. § 416.929 and SSR 16-3p, and the Court rejects Plaintiff's arguments to the contrary.

---

[14] The ALJ noted Plaintiff's testimony that she had difficulty climbing stairs, squatting, and putting on shoes and socks. (R. 27.) The ALJ also noted Plaintiff's complaints to doctors of mild achiness in her hip with weather changes (R. 28), that stair climbing increased her pain (R. 29), and of pain after falling on ice (R. 30).

[15] The ALJ noted that Plaintiff was prescribed, at various times, Chantix, Bentyl, Imitrex, Meloxicam, Tylenol, Nexium, Zofran (which Plaintiff reported "helped" somewhat with her headaches), ibuprofen, Gabapentin, Flexeril, Medrol Dosepak, and Diclofenac. (R. 22, 27-30.) The ALJ also noted Plaintiff's continued, varying musculoskeletal pain while engaged in medication treatment. (R. 27-31, 35.)

[16] The ALJ noted that Plaintiff underwent a right total hip arthroplasty and right leg peroneal nerve release (R. 28-29) and that her primary care physician, Dr. Edward Rylander, recommended Plaintiff adopt a healthy diet and daily walks for at least 30 minutes with jogging and running as a future goal (R. 31).

[17] Plaintiff argues the ALJ merely used boilerplate language to assess the consistency of Plaintiff's claims, pointing to the ALJ's discussion of Chantix. (ECF No. 16 at 12 (citing R. 27).) Specifically, Plaintiff complains that "[u]se of Chantix and reasons for using Chantix to stop smoking has little relationship to Claimant's significant physical and pain limitations." (*Id.*) She is correct. But, the ALJ only discussed Chantix as an "example" of an inconsistency, and one related to Plaintiff's mental limitations. (R. 27.) As noted above, this was not the only evidence the ALJ considered.

### 3.     The Effects of Plaintiff's Obesity

In her opening brief, however, Plaintiff argues the ALJ "ignored" the effects of Plaintiff's obesity and that it became "insignificant" at step five, despite being "severe" at step two.  (ECF No. 16 at 9.)  This is incorrect.  In addition to assessing Plaintiff's self-reported obesity and musculoskeletal-related limitations (R. 27 (discussing her reported difficulties walking, climbing stairs, squatting, and bending over)), as well as the evidence of obesity noted by her treatment providers (R. 29-32), the ALJ also specifically noted as follows: "The claimant's obesity was taken into consideration in determining her [RFC]. The standing, walking, lifting, carrying, and postural limitations in the [RFC] are in part due to obesity." (R. 23.)  Moreover, the mere presence of a severe impairment at step two does not necessitate a limitation in the RFC or step-five hypothetical.  *See Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017) ("a finding that an impairment is severe at step two is not determinative of the claimant's RFC and cannot substitute for a proper step-four analysis"); *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (unpublished) (ALJ's step-five hypothetical to the VE must accurately reflect only the impairments and limitations borne out by the evidentiary record).

### 4.     Picking and Choosing

Plaintiff also argues that the ALJ engaged in "impermissible picking and choosing" among record evidence.  (ECF No. 16 at 9-10.)  Despite Plaintiff's claims to the contrary (*id*. at 12-14), the ALJ conducted a full analysis of the "credibility" of Plaintiff's subjective symptoms and the related medical evidence.  *See supra* § III(D)(2).  The ALJ's articulation of her RFC analysis gives the undersigned no reason to believe that she ignored evidence, and Plaintiff has provided none.

To the extent Plaintiff is contending the ALJ failed to specify the consistency of Plaintiff's claimed symptoms involving her "foot brace, her migraine headache frequency . . ., difficulty with stairs and squatting, poor sleep, performing chores with assistance, [and] difficulty putting on clothes due to bending," (ECF No. 16 at 13), Plaintiff's argument fails. All of these symptoms were considered by the ALJ in determining the RFC. *See supra* nn. 12-14. A "formalistic factor-by-factor recitation of the evidence" is not required so long as the ALJ sets forth the specific evidence on which she relies. *Qualls*, 206 F.3d at 1372. Plaintiff has not shown that the ALJ ignored or minimized portions of the record tending to show Plaintiff is disabled. Therefore, Plaintiff's argument here fails as well.

### E. The ALJ's "Significant Numbers" Finding is Supported by Substantial Evidence.

Plaintiff argues that the ALJ erred in finding, at step five, that Plaintiff could perform work that "exists in significant numbers in the national economy," where the VE identified representative jobs that total 78,400 nationally. (ECF No. 16 at 11; *see also* R. 36.) In the midst of this argument, Plaintiff also appears to take issue with the reference to "light" work, instead of "sedentary" work, in the RFC. (*Id.* at 10-11.) The undersigned will address this issue first.

Plaintiff complains,

> In Claimant's RFC, although the ALJ provided a lifting requirement that was more than sedentary, she provided a sedentary sitting requirement and provided other sedentary requirements of no kneeling, crouching, or crawling, and only occasional stooping (T 26). This equates to a sedentary RFC. *Id.*

(*Id.*) Plaintiff's own statement demonstrates the fallacy of her argument. Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting or carrying certain types of small objects. 20 C.F.R. § 416.967(a). A sedentary job generally involves

sitting, but walking or standing can be required occasionally.  *Id.*  Light work requires

more.  *Id.* § 416.967(b).  A claimant who can do light work can lift no more than 20 pounds

at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.  *Id.*  Light

work can also involve a good deal of walking or standing, or sitting with the pushing or

pulling of arm or leg controls.  *Id.*  By agreeing that the "ALJ provided a lifting

requirement that was more than sedentary" (ECF No. 16 at 10)—i.e., Plaintiff could lift 20

pounds occasionally—Plaintiff's RFC could <u>not</u> be characterized as fully sedentary.

In any event, the ALJ did not find Plaintiff could perform the full range of light

work.  (R. 26.)  Instead, the ALJ found Plaintiff could perform "less than a full range of

light work" (*id.*) and asked the VE about either sedentary or light jobs, "[w]hichever are

more appropriate under the RFC given" (R. 76).  The VE then provided the exemplar jobs

relied on by the ALJ, noting for the two "light" jobs that the numbers available were

reduced due to the additional limitations imposed by the ALJ's hypothetical.  (R. 76-77;

*see also* R. 36.)  Plaintiff does not take issue with the VE's testimony, nor does Plaintiff

offer any basis for finding that the reduction in Plaintiff's RFC below the full range of light

work was in any way inappropriate.

Rather, Plaintiff moves immediately into an apparent argument that there were

not enough combined jobs available in all three professions cited by the ALJ.[18]  Under the

Act, work exists in significant numbers in the national economy when it exists in such

---

[18] Plaintiff's argument is not completely clear at this point.  She states the VE testified to two jobs with "43,400 and 19,700 jobs respectively" with "numbers losses up to 30 percent based on the RFC." (ECF No. 16 at 11.)  This appears to be referring to one of the "light" jobs cited by the VE—small products assembler—which had its national numbers reduced to account for the further restrictions in the RFC, as well as the one "sedentary" job—document preparer.  (R. 76-77.)  It appears Plaintiff has simply overlooked the third job.  In any event, as Plaintiff contends that anything less than 100,000 jobs is insignificant, this issue does not appear to affect her argument.

numbers either in the region where the claimant lives or in several other regions of the country.  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.966(a).  Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)).  As such, the Tenth Circuit has declined to draw a bright line for the number of jobs necessary to constitute a "significant number." *Trimiar*, 966 F.2d at 1330; *see also Garcia v. Comm'r*, 817 F. App'x 640, 649 (10th Cir. 2020) (continuing to note there is no bright line).  The ALJ in this case explicitly found that the 78,400 jobs identified at step five existed in significant numbers in the national economy.  (R. 36.)

Plaintiff, however, argues that "[u]nder Tenth Circuit law, numbers under 100,000 nationally constitute an insignificant number of jobs." (ECF No. 16 at 11.)  The decisions she cites, however, do not stand for this proposition.  Plaintiff relies on inapposite cases that address a different situation—namely, where the reviewing court finds harmless error and supplies a missing dispositive finding on the basis that no reasonable factfinder could find otherwise. *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (no reasonable factfinder could have determined that 152,000 national jobs was not significant); *Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (after eliminating a job, refusing to affirm based on two remaining jobs when it was unclear whether the ALJ found that those jobs, standing alone, constituted a significant number); *see also Raymond v. Astrue,* 621 F.3d 1269, 1274 (10th Cir. 2009) (finding no colorable dispute that 1.34 million jobs nationally constitutes a legally significant number, making it unnecessary to address the plaintiff's arguments as to the other jobs).

Here, however, the Court is not supplying a missing dispositive finding. Instead, "this case involves court review of a *finding* of numerical significance *made by the ALJ* and not a determination in the first instance that a particular number is significant under the circumstances." *Garcia*, 817 F. App'x at 650 (quoting *Allen*, 357 F.3d at 1144) (cleaned up). Consequently, the undersigned does not have to supply a dispositive fact, as a matter of law. The ALJ explicitly found that 78,400 was significant. (R. 36.) Plaintiff has offered no basis, other than inapplicable law, for this Court to interpose its judgment for that of the ALJ in order to overturn her finding. *See Garcia,* 817 F. App'x at 649-50 (affirming an ALJ's finding that 20,500 to 22,000 jobs constituted a significant number).

### F.     The Step-Five Hypothetical was Adequate.

Finally, Plaintiff briefly argues that "[b]y ignoring evidence, the ALJ could not have properly formulated a hypothetical question and RFC supported by substantial evidence." (ECF No. 16 at 15.) Plaintiff maintains that the ALJ omitted "physical exertional and nonexertional limitations caused by Claimant's severe medical conditions" and "failed to follow the required legal standards to formulate a hypothetical question and an RFC that adequately accounted for Claimant's limitations." (*Id.*) This argument largely summarizes Plaintiff's earlier arguments and does not contain anything new for the Court to address. The undersigned has already rejected Plaintiff's arguments as to specific errors that would impact the RFC. Where the RFC is proper, and the hypothetical to the VE included all the limitations in the RFC, the VE's testimony provides a proper basis for the ALJ's decision. *See Qualls*, 206 F.3d at 1373. Plaintiff's arguments fail.

### IV.    Conclusion and Recommendation

The undersigned Magistrate Judge finds the ALJ applied the correct legal standards and that substantial evidence supported the Commissioner's decision.

Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** as to the issues returned to the undersigned for consideration by Judge Freudenthal.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by July 19, 2022.

If specific written objections are timely filed, Rule 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 5th day of July, 2022.

_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**