UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MIRANDA R. A.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 20-CV-453-NDF-SH |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is the second report and recommendation of a Magistrate Judge (Dkt. # 30) recommending that the Court affirm the decision of the Commissioner of the Social Security Administration (Commissioner) denying social security benefits to Plaintiff. Plaintiff filed a timely objection (Dkt. # 31) to the report and recommendation. The Commissioner filed a response. Dkt. # 32.

### I. BACKGROUND

The following administrative background is identical to that outlined by the Court in its earlier Order (Dkt. # 29) rejecting the initial report and recommendation, and returning the matter to the Magistrate Judge for a report and recommendation addressing Plaintiff's remaining issues.

Plaintiff applied for disability benefits on May 7, 2018, with a protective filing date of April 24, 2018. Dkt. # 12-2, p. 20 & # 12-5, pp. 7-8.[1] Plaintiff alleges she has been disabled since March 22, 2017, due to conditions including a learning disability and a right hip replacement. Dkt. # 12-6, p. 6. Plaintiff's claim was denied initially and upon reconsideration. Dkt. # 12-4,

---

[1] The page numbers refer to the docket page number, not the administrative record page number.

pp. 8 & 15. Plaintiff requested a hearing before an administrative law judge (ALJ), and the hearing was held on December 19, 2019. Dkt. # 12-2, p. 45. Plaintiff was represented by counsel at the hearing. After the hearing, the ALJ issued a decision detailing the medical records Plaintiff provided, as well as her testimony and the testimony of a vocational expert (VE). *Id*. at pp. 20 – 38. The ALJ assessed that information in conjunction with the five-step process outlined to assess disability.

In the decision, the ALJ first found that Plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset of disability. *Id*. at p. 22. Next, at step two of the analysis, the ALJ found Plaintiff had the following severe impairments – status post right hip replacement, history of sciatic palsy with periodic right foot drop, restless leg syndrome of the right leg, anxiety disorder, and obesity. *Id*. The ALJ also discussed Plaintiff's additional medical conditions causing impairments which were considered by the ALJ to be non-severe, given that these impairments, when considered in conjunction with one another and Plaintiff's severe impairments, could affect her residual functional capacity. *Id*. at p. 23. In considering all impairments, the ALJ found that neither the impairments nor the combination of impairments met or medically equaled the severity of an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24.

After finding that Plaintiff's impairments did not meet or medically equal a listed impairment at step three, the ALJ proceeded to step four of the analysis and found that Plaintiff had the residual functional capacity (RFC) to perform less than a full range of light work with the following limitations:

> …[L]ift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally. She is able to sit up to 6-hours in an 8-hour workday. She is able to stand and/or walk up to 2-hours in an 8-hour workday. She is able to frequently balance. She is able to occasionally climb ramps or stairs or stoop. However, her job should not

2

> involve climbing ladders, ropes or scaffolds, kneeling, crouching or crawling. She is able to perform simple, routine tasks. She is able to make judgments regarding simple routine tasks. She is able to maintain attention and concentration for up to 2-hours at a time while performing simple, routine tasks. She is able to sustain the mental demands associated with performing simple, routine tasks throughout an ordinary workday and workweek. She is able to frequently interact with supervisors, co-workers and the general public. Her job should not involve more than ordinary and routine changes to work setting or job duties.

*Id.* at 27. In support of his determination, the ALJ summarized the evidence in the record. *Id.* at 28-36. The ALJ then summarized Plaintiff's testimony and subjective complaints. The ALJ did not summarize the third-party report filed by Plaintiff's daughter, Ms. McKee.

Plaintiff testified if she stands more than thirty minutes in the same spot, her hip would cramp up and she would need to walk or sit down. *Id.* at pp. 60-61. She can sit about forty minutes before she feels a sharp pain in her hip, and then would need to stand and move around or use an ice pack. *Id.* at 61. She testified she can't get out of a ninety degree angle. *Id.* at 62. After the nerve release procedure, Plaintiff testified she has no feeling from her knee to her foot and has foot drop which requires the use of a brace. *Id.* at 62-63. Plaintiff uses a grabber if she drops something because she can't squat or bend. *Id.* at p. 66-67. She testified she can only lift 20 pounds. *Id.* at 67.

Plaintiff's daughter Ms. McKee completed a third-party function report dated June 16, 2018. Dkt. #12-6, p. 31-38. Ms. McKee reports Plaintiff can't bend over or kneel down to pick things up, can't move out of a ninety-degree angle, can't lift heavy things (over ten pounds), can't stand for forty minutes without needing to sit down, can't walk up more than three stairs, and can't wash her feet or lower legs. *Id.* at 31-32, 36. Ms. McKee helps Plaintiff stand and sit back down, helps put on Plaintiff's pants, socks, and shoes, and helps Plaintiff get up from the toilet. *Id.* at 32. Plaintiff is able to fix simple meals, do sweeping and dishes, drive a car, shop for food and personal

items, and pay attention and follow spoken instructions very well (although sometimes plaintiff needs to reread written instructions). *Id*. at 33-36. Plaintiff gets along very well with authority figures. *Id*. at 37 According to Ms. McKee, Plaintiff does not handle stress very well, and Plaintiff requires the use of a walker and brace/splint every day. *Id*. at 37.

The ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. Dkt. # 12-2, p. 28. The ALJ discussed the medical evidence and assessments in detail from records beginning March 22, 2017 (before the alleged onset date) through November 21, 2019. *Id*. at 29-35. The ALJ summarized this evidence as it related to the RFC as follows:

> In sum, the above residual functional capacity assessment is supported by a preponderance of evidence gleaned from statements of record, testimony and medical evidence of record from treating sources, medical consultants and State agency physicians and psychologists. In August 2018, the claimant denied soreness or pain with walking. She denied numbness or tingling. She was willing to try Tylenol instead of Meloxicam for occasional hip pain. Despite her history of right hip replacement and history of sciatic palsy with periodic right foot drop, a treating physician recommended walking for at least 30 minutes as exercise with jogging or running in the future in September 2019. Physical examination during orthopedic follow-up in November 2019 was unremarkable. Anxiety, including situational stressors, has been addressed with outpatient counseling. Nevertheless, the claimant has impairments that cause significant limitations, but considering treating and examining source opinions, limitations are not of a severity to preclude ability to meet demands of basic work activities and not contrary to a finding that she has the residual functional capacity for work at the level assigned as determined with the assistance of a vocational expert.

*Id*. at 35-36.

At steps four and five of the analysis, the ALJ determined that Plaintiff could not perform her past relevant work but that there were jobs available in the regional and national economies that Plaintiff could perform with her RFC. *Id.* at 36-37. Based on this finding, the ALJ

4

determined that Plaintiff was not disabled. The Appeals Council found no basis to change the ALJ's decision and denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* at 2-4.

Plaintiff timely filed this case requesting judicial review of the denial of her claim for benefits, and the matter was referred to a Magistrate Judge for a report and recommendation. Dkt. # 2, 5. The Magistrate Judge recommended that the Commissioner's decision be reversed and remanded because it did not appear in the record that the ALJ considered Ms. McKee's report (or even knew of it). Dkt. # 23.

The Commissioner objected to the report and recommendation, and this Court agreed with the Commissioner that the ALJ's failure to consider Ms. McKee third-party function report was harmless. The matter was returned to the Magistrate Judge for a report and recommendation addressing Plaintiff's remaining issues. Dkt. # 29.

As to Plaintiff's remaining issues, the Magistrate Judge recommends the Commissioner's decision denying benefits be affirmed. Dkt. #30.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. The parties may object to the magistrate judge=s recommendation within 14 days of service of the recommendation. *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 975 (10th Cir. 2002); *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999); 28 U.S.C. § 636(b)(1). If a party objects, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations

5

to which objection is made." *Id*. The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

In reviewing an objection to a social security benefits determination, this Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994), *superseded in part on other issue*. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. A court may neither reweigh the evidence nor substitute its judgement for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the ALJ's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### III. ANALYSIS

Plaintiff objects to the Magistrate Judge's report and recommendation that the Commissioner's decision to deny her claim for benefits should be affirmed. She argues various issues associated with the Court's underlying decision rejecting the Magistrate Judge's initial report and recommendation. Such arguments are improper. The statutory process which allows a party to object to a report and recommendation from a magistrate judge is **not** an opportunity to

seek reconsideration of a district court's prior order rejecting an earlier report and recommendation. Rather, as noted above, it is a statutory process to obtain de novo district review of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made. Consequently, the Court will not address improper and untimely "objections" to its earlier order (Dkt. # 29).

Turning next to the portions of the report and recommendation to which objection is made, Plaintiff objects to the Magistrate Judge's report and recommendation that determined: (1) the ALJ properly evaluated the examination records of Dr. Carroll and appropriately assessed Plaintiff's pain and other motor limitations; (2) the step-five hypothetical was adequate; and (3) the ALJ's "significant numbers" finding is supported by substantial evidence.

A.  Dr. Carroll's Examination and Plaintiff's Pain and Limitations

Plaintiff was seen by Dr. Carroll on September 20, 2018. She reported her chief complaint as right hip pain, and reported that she cannot kneel and crouch, and that nothing has really helped her hip pain. Dkt. #12-7, p. 179. Plaintiff's passive range of joint motion for her right hip was limited to 30 degrees. *Id*. at p. 181. The ALJ provided a comprehensive summary of Dr. Carroll's examination, which included the objective clinical finding that Plaintiff exhibited a full range of motion of her spine and extremities with normal strength, along with the range of motion limitations for Plaintiff's right hip, and that she complained of pain with external rotation of the right hip. The ALJ also summarized Dr. Carroll's observation that Plaintiff's gait was normal with a right-sided limp present. Dkt. #12-2, p. 30. The ALJ also summarized orthopedic care and treatment by others following this consultative examination beginning October 2018 through

November 21, 2019. *Id.*, pp. 30-32. Focusing on Plaintiff's medical records relating to orthopedic pain, the ALJ provided the following analysis:

> In August 2018, the claimant denied soreness or pain with walking. She denied numbness or tingling. She was willing to try Tylenol instead of Meloxicam for occasional hip pain (C29F). Despite her history of right hip replacement and history of sciatic palsy with periodic right foot drop, a treating physician recommended walking for at least 30 minutes as exercise with jogging or running in the future in September 2019 (C29F/2). Physical examination during orthopedic follow-up in November 2019 was unremarkable (C28F). …. Nevertheless, [Plaintiff] has impairments that cause significant limitations, but considering treating and examining source opinions, limitations are not of a severity to preclude ability to meet demands of basic work activities and not contrary to a finding that she has the residual functional capacity for work at the level assigned as determined with the assistance of a vocational expert.

*Id*. at pp. 35-36.

Plaintiff complains that Dr. Carroll's examination omitted key evidence relating to Plaintiff's right knee surgery and pain limitations, which then were ignored by the ALJ. Plaintiff also complains that the ALJ ignored evidence of pain and motor limitations contained in Plaintiff's 2019 medical evidence, and that the ALJ's conclusory statements are insufficient given the record which indicates Plaintiff's pain and motor limitations preclude work.

It is difficult to follow Plaintiff's argument complaining about Dr. Carroll's "omission of key evidence." Dr. Carroll provided a history of Plaintiff's orthopedic complaints, reported his examination findings, and provided a completed Range of Joint Motion Evaluation Chart among other charts and worksheets. The Court is not called upon to review any so-called omissions of medical evidence by Dr. Carroll, but to determine whether the ALJ has applied the correct legal standards and whether the ALJ's decision is supported by substantial evidence. The only argument Plaintiff advances concerning the ALJ is her complaint that the ALJ ignored Dr.

Carroll's measures of her hip extensions and rotation and further ignored the pain and limitations that Dr. Carroll ignored.

Dr. Carroll's 2018 range of motion measurements constitute objective medical evidence but not medical opinion evidence. Medical opinion evidence is defined as "a statement from a medical source about what [Plaintiff] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in her ability to perform the physical, mental, or other demands of work activities, or in her ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2) and (a)(2)(i). As objective medical evidence, the ALJ is required to consider such evidence, but is not required to articulate the analysis of the evidence that is required for medical opinions. *See* 20 C.F.R. §§ 416.920(a)(3) and 416.920c. The ALJ did not ignore Dr. Carroll's range of motion limitations as argued by Plaintiff. Rather, the ALJ specifically discussed these findings, including that Plaintiff complained of pain with external rotation of the right hip. Plaintiff fails to provide a basis for her complaint about Dr. Carroll's measures of hip limitations and consideration by the ALJ, and the record shows the consideration which is what is required. Plaintiff's argument of error as to the ALJ's consideration of Dr. Carroll's medical evidence is therefore rejected.

As to Plaintiff's argument that the ALJ ignored or improperly considered Plaintiff's pain and motor limitations, this argument is also unpersuasive. The ALJ discusses the records which indicate that Plaintiff denied pain and showed unremarkable physical examination findings, as well as those records showing pain and suggestions for medication and exercise for symptom relief. The ALJ also discusses Plaintiff's daily activities. Only after these discussions and analyses does the ALJ conclude that Plaintiff's statements regarding the intensity, persistence, and limiting

9

effects of her symptoms are not wholly consistent with the record. The ALJ found impairments with significant limitations but not of a severity to preclude all work. The Court concludes this is an adequate evaluation and rejects Plaintiff's arguments that her pain and motor limitations "overwhelm[]" the ALJ's findings.

   B. <u>Step-Five Hypothetical</u>

Plaintiff argues the ALJ failed to properly consider Ms. McKee's witness testimony which would have found Plaintiff disabled. This argument was considered and rejected in the Court's prior Order. Dkt. 29, pp. 7-8. Specifically, the Court concluded Ms. McKee's witness statement was cumulative of or contradicted by Plaintiff's testimony which was properly considered by the ALJ, and thus the alleged failure to consider Ms. McKee's witness statement was harmless. Plaintiff's objections to this ruling are untimely and improper as an objection to the Magistrate Judge's report and recommendation.

   C. <u>Erosion of Job Base and "Significant Numbers" Finding</u>

Plaintiff challenges the ALJ's reliance on the testimony of the vocational expert (VE) as to "what 'light' is determined by." Dkt. # 31, p. 11. Plaintiff argues the ALJ was required to follow the regulations which clearly state that sitting six of eight hours is sedentary (not light) work. Plaintiff also challenges the number of jobs available nationally because "small products assembler" and "electronics worker" are suspect given that the regulations define these jobs as "light" and they must be eliminated because Plaintiff's sitting limitation places her in sedentary work. Finally, Plaintiff argues that the total of 58,700 "suspect" light jobs and 19,700 sedentary jobs fail to approach numbers recognized by this Circuit as significant and that the ALJ failed to find the number of remaining jobs to be significant.

10

As to the argument that the ALJ ignored the regulations in deference to the VE, that argument is rejected. The RFC lifting restriction is more than sedentary, and Plaintiff fails to address or contest this point. Plaintiff also does not object to the ALJ's determination that Plaintiff's additional limitations erode the unskilled light occupational base. Dkt. # 12-2, p. 37. Further, Plaintiff does not challenge the reduced numbers available for the eroded unskilled light occupational base. Finally, Plaintiff does not address or challenge the ALJ's determination that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." Therefore, Plaintiff's arguments which purport to characterize as "suspect" the eroded "light" exertion unskilled work are rejected.

Turning next to whether the remaining number of jobs is "significant," Plaintiff argues the ALJ relied on the VE testimony and did not find the number of remaining jobs to be significant. The Court rejects this argument. As noted above, the ALJ found the VE's testimony to be consistent with the information in the Dictionary of Occupational Titles, and also found that the exemplar jobs in the eroded unskilled occupational base "exist[] in significant numbers in the national economy." *Id*. Consideration of the number of jobs regionally and nationally is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Consequently, the issue is whether "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145.

Based on the record presented, the Court agrees with the Magistrate Judge that the ALJ made a finding of numerical significance, and the Court cannot substitute its judgment for that of the ALJ to overturn this finding.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Report and Recommendation (Dkt. # 30) is **accepted**, and the Commissioner's decision to deny Plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 3rd day of August, 2022.

*/s/ Nancy D Freudenthal*
_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE